

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV - 8 2000
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| MARGARET DUVAL AND LAURA MOORE, | § § § |
| Plaintiffs, | § § |
| v. | § § 2-00CV-0366J |
| Mary Ann Franken, M.D., Ronald H. Hodges, M.D., Shane Driggs, M.D., R. Moss Hampton, M.D., David G. McNeir, M.D., Northwest Texas Healthcare System, Inc., and Universal Health Services, Inc., | § § § § § § § § |
| Defendants. | § |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Margaret Duval and Laura Moore, Plaintiffs, complain of Mary Ann Franken, M.D, Ronald H. Hodges, M.D., Shane Driggs, M.D., R. Moss Hampton, M.D., David G. McNeir, M.D., Northwest Texas Healthcare System, Inc., and Universal Health Services, Inc., Defendants, and would show the Court as follows:

### PARTIES

1. Plaintiffs are residents of Mandeville, St. Tammany Parish, Louisiana.

2. Defendant Mary Ann Franken, M.D., is a resident of Carrollton, (Dallas, Collin or Denton County), Texas, and may be served with process at her office, located at 4323 N. Josey Lane, Plaza I, Suite 306, Carrollton, TX 75010.

3. Defendant Ronald H. Hodges, M.D., is a resident of Amarillo, (Potter or Randall County), Texas, and may be served with process at his office, located at University Women's Health Center, 1600 Coulter Drive, #G400, Amarillo, TX 79106.

4. Defendant Shane Driggs, M.D., is a resident of Amarillo, (Potter or Randall County), Texas, and may be served with process at his office, located at 1400 Coulter Drive, Amarillo, TX 79106.

5. Defendant R. Moss Hampton, M.D., is a resident of Amarillo, (Potter or Randall County), Texas, and may be served with process at his office, located at University Women's Health Center, 1600 Coulter Drive, #G400, Amarillo, TX 79106.

6. Defendant David G. McNeir, M.D., is a resident of Amarillo, (Potter or Randall County), Texas, and may be served with process at his office, located at 1400 Coulter Drive, Amarillo, TX 79106.

7. Defendant Northwest Texas Healthcare System, Inc., is a Texas corporation which may be served by service of process on its registered agent, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

8. Defendant Universal Health Services, Inc., is a foreign corporation, duly formed and existing under the laws of the State of Delaware. Defendant, at all times material to this action, was engaged in business in Texas, as more particularly described below. Defendant does not maintain a place of regular business in Texas and has no designated agent on whom service of citation may be made in this cause. The causes of action asserted arose from or are connected with purposeful acts committed by the Defendant in Texas because Defendant entered into contracts with its co-Defendants and others to provide health care services in the Amarillo and surrounding areas of Texas, as more fully described below. It is the negligence of the Defendants, including Universal Health Services, Inc., in rendering health care services to Plaintiff Margaret Duval that constitutes the basis of Plaintiffs' causes of action. Accordingly, Defendant may be cited by serving the Secretary of State of Texas provided that the citation and petition are forwarded to Defendant's registered agent's address, R.M. Dubb, Esq., 367 S. Gulph Road, King of Prussia, PA 19406, certified mail, return receipt requested.

9. As evidenced by the facts recited herein, each Defendant has done business in the state of Texas, and is, therefore, subject to the jurisdiction of this court.

## JURISDICTION

10. There exists complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1332.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(2).

## NOTICES

12. Notice required by Article 4590i, Texas Revised Civil Statutes, was delivered to all Defendants by certified mail on July 17, 2000.

## FACTS

13. On or about Friday, March 12, 1999, Margaret Duval presented to the Emergency room of Northwest Texas Hospital complaining of back pain and abdominal pain that had been present for two days. The pain had worsened on the 12th, and she went to the emergency room. She was first evaluated by Scott Burner, M.D., an emergency room doctor in attendance and provided by the hospital, whose examination revealed a mass that was located partially in the pelvis and partially in the abdomen. Other symptoms included a history of two vomiting episodes the day before, constipation, and tenderness in the left lower quadrant of her abdomen. Dr. Burner, as required by hospital procedures, referred Ms. Duval to the Texas Tech Gynecology Department where she was first seen by Defendant Mary Ann Franken, M.D. Dr. Franken diagnosed Ms. Duval as having tenderness upon palpation of the mass, but no rebound tenderness or guarding of her abdomen. Dr. Franken also noted that surgery would be necessary to evaluate the mass and indicated she thought it was probably cancerous. After 23 hours of observation, Dr. Franken discharged Ms. Duval home while prescribing Vicodin, a strong pain reliever that masked her symptoms, and setting an appointment for the morning of March 16, 1999, a Tuesday, for further evaluation. Dr. Franken failed to consult with a qualified physician regarding Ms. Duval's care, assumed incorrectly that the mass was malignant without performing any tests, failed to establish a differential diagnosis that could include that the mass was "torsed" which would require immediate attention, failed to perform emergency surgery, and failed to timely render appropriate care.

14. On Monday, March 15, 1999, Ms. Duval again presented at the emergency room of Northwest because her pain had worsened. She had also had another episode of vomiting, which on this occasion produced bile. Dr. Franken again evaluated Ms. Duval and noted a fever of 100.7, pulse of 122, a mildly tender abdomen throughout, rebound tenderness, voluntary guarding, and a

large pelvic mass. However, in view of these symptoms, Dr. Franken still stated in her assessment that there was no evidence of an acute abdomen "at this time." Later that same day, Ms. Duval's fever increased to 101.1, she continued to suffer from nausea, and her white blood count was an elevated 12.1. Dr. Franken also noted that Ms. Duval still exhibited rebound tenderness. In spite of these classic signs of an acute abdomen which required immediate surgical intervention, Dr. Franken delayed surgery on Ms. Duval to Wednesday, March 17, 1999. Dr. Franken ordered an ultrasound to rule out torsion, even though this test is not conclusive unless the torsion is complete. Ms. Duval's symptoms of incomplete torsion had now been evident for at least 3 days, yet proper treatment was delayed by Dr. Franken on March 15, 1999, for another 2 days.

15. On March 17, 1999, Dr. Franken, along with Defendants Ronald H. Hodges, M.D., Shane Driggs, M.D., and David McNeir, M.D., performed surgery on Ms. Duval. The mass was removed. The mass arose from Ms. Duval's left ovary and had enveloped her left Fallopian tube as well. Upon removal of the mass, including the left ovary and Fallopian tube, the Defendants Franken, Hodges, Driggs, and McNeir failed to order a frozen pathology section to determine whether the mass was malignant, erroneously and inappropriately assumed the mass was malignant simply by its outward appearance (gross evaluation), and proceeded to remove Ms. Duval's uterus, right ovary, and omentum and ran her bowel. Once the mass was removed and before definitive test results were received, none of the latter actions by the Defendants Franken, Hodges, Driggs, and McNeir was reasonable or necessary. By removing the right ovary, Fallopian tube, uterus, and omentum and running the bowel, Defendants Franken, Hodges, Driggs, and McNeir increased Ms. Duval's probability of morbidity and potential mortality. Such actions were contraindicated in the nonmalignant setting which faced them at the time of the surgery.

16. Between March 17, 1999, and March 28, 1999, Defendants Franken, Hodges, Driggs, and McNeir, along with Defendant R. Moss Hampton, M.D., continued to neglect Ms. Duval. After her surgery on the 17th, Ms. Duval developed an ileus. Normally, such a post-operative ileus should resolve itself within 3 to 4 days. Ms. Duval, however, continued to suffer from the ileus and other complications indicating severe problems. However, the doctors failed to timely intervene to resolve an intestinal leak into the abdominal cavity that had developed. Further, they failed to test by

appropriate procedures and locate the breech of the small intestine. Finally, they failed to bring in the appropriate specialists to deal with the broached intestine. The broached intestine caused necrosis in Ms. Duval's abdomen, resulting in most of her small intestine dying and having to be removed.

17.  As the result of the entire sequence of negligent events by Defendants Franken, Hodges, Driggs, McNeir, and Hampton, Ms. Duval lost all but a small portion of her small intestine and now suffers from permanent short bowel syndrome. She requires permanent tube feeding and has a significantly shorter life expectancy than before. Currently, Ms. Duval is hospitalized in order to provide her with the 24-hour a day nourishment she requires as the result of the Defendants' negligence.

18.  The negligence of Defendants Franken, Hodges, Driggs, McNeir, and Hampton is imputed to Defendants Northwest Texas Healthcare System, Inc. and Universal Health Services, Inc. because Defendants Franken, Hodges, Driggs, McNeir, and Hampton are their ostensible and apparent agents. Further, NWTHS is liable to Plaintiffs by permitting residents at Texas Tech University Health Sciences Center to practice medicine in their facility without proper supervision and monitoring, failing to require the maintenance of adequate and complete records, permitting physicians to practice medicine at the hospital without making timely and appropriate discharge summaries, failing to require operative notes to be timely filed by the medical staff, and in failing to obtain appropriate consent from the patient.

## JOINT ENTERPRISE

19.  All the Defendants were engaged in a joint enterprise. At all times material to this action, there was a contract between Northwest Texas Healthcare System, Inc. and Texas Tech University Health Sciences Center School of Medicine (Texas Tech) in the first paragraph of which, entitled **"Purpose,"** they agreed "that there are mutual benefits derived from the common objectives of the promotion and delivery of patient care, effective medical education, and productive clinical and HealthCare research. The services and support identified in this Agreement are intended to facilitate the mutually collaborative and supportive efforts by both parties for each other." The Defendant doctors were hired by Texas Tech and provided services to the public pursuant to the

contract with Northwest Texas Healthcare System, Inc. in an effort to fulfill the above-stated agreed common purpose.

20. Not only did the Defendants have an agreed common purpose as stated above, but they also shared a common business or pecuniary interest in that common purpose. Under the contract, Northwest Texas Healthcare System, Inc. agreed to pay to Texas Tech $100 per hour of service provided by the physician faculty at the Community Health Center. Further, Northwest agreed to provide funding for the Regional Dean's Education Fund in the amount of $120,000.00 per year. This Fund was to be used solely in support of the educational mission of Texas Tech. Northwest also agreed to pay $60,000.00 per year for the position of NICU Medical Director provided by Texas Tech, to assist in funding several departments at Texas Tech in the amount of $250,000.00 per year, and to contribute to Texas Tech certain amounts toward a scholarship/loan program for medical students. In exchange for all these monetary incentives, Texas Tech agreed to supply health care support for Northwest Texas Healthcare System, Inc. Northwest Texas Healthcare System, Inc. also benefitted from the contract in being able to more fully promote and deliver patient care to its patients, thereby increasing its own financial benefits.

21. Finally, Northwest had the right to direct and control their joint enterprise. The contract notes several instances in which Northwest has the right to concur with or deny different aspects of the work of the physicians provided by Texas Tech, including, but not limited to, setting the written work schedules of the doctors, referring patients to specialists, billing for services rendered by the physicians, hiring of physician faculty members, terminating support for physicians, choosing the NICU director, requiring Texas Tech faculty members to assist with indigent care services, and requiring Texas Tech faculty members and residents to provide services for "unassigned" patients.

22. Because Northwest and the doctors at Texas Tech are engaged in a joint enterprise, Northwest is liable for the negligent acts of the Defendant doctors who are, therefore, deemed their employees. The Defendant doctors were acting within the course and scope of their employment with Northwest Texas Healthcare System, Inc. when they provided care to Ms. Duval. Therefore, the negligence of the Defendant doctors is imputed to Northwest.

## RESPONDEAT SUPERIOR

23. At all times relevant to this cause, the Defendant doctors were employees of Northwest Texas Healthcare System. Under the contracts between Texas Tech and Northwest, the Defendant doctors were paid a set fee by Northwest for the services they rendered at Northwest, Northwest billed for the doctors' services, the patients (or their insurance companies) paid Northwest directly for the services rendered by the Defendant doctors, the patients did not get to choose which doctor would treat them, the hours worked by the Defendant doctors were set by Northwest, and the Defendant doctors' days off and holidays were set by Northwest. Northwest controlled the conditions of the Defendant doctors' rendering of services, the hours worked, and the billing for the services rendered. Under these facts, Northwest is considered the employer of the Defendant doctors.

24. As the employer of the Defendant doctors, Northwest is liable for their negligence under the theory of respondeat superior. At all times relevant to this action, the Defendant doctors were the agents, servants, and employees of Northwest and were acting within the scope of their authority as such agents, servants, and employees.

## DAMAGES

25. Plaintiffs have suffered and here seek to recover damages as allowed by law, including the following elements of damages:

   a. The cost of past and future medical care;
   b. Physical pain in the past;
   c. Physical pain in the future;
   d. Mental anguish in the past;
   e. Mental anguish in the future;
   f. Physical impairment in the past;
   g. Physical impairment in the future;
   h. Diminished earning capacity;
   i. Disfigurement;
   j. Diminished quality of life in the past;

k. Diminished quality of life in the future;

l. Loss of consortium.

## GROSS NEGLIGENCE

26. The Defendants' conduct in delaying to treat Ms. Duval appropriately when she first presented at Northwest on March 12, 1999, and again when she presented on March 15, 1999; their conduct in performing a cancer operation when there was no definitive evidence that the mass was cancerous; and their conduct in failing to timely and properly treat her post-operative complications was grossly negligent, in that, when viewed objectively from the standpoint of the Defendants at the time of the act or omission, the conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and in that the Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded with conscious indifference to the rights, safety, or welfare of others. As a result, Plaintiffs are entitled to recover punitive or exemplary damages from the Defendants.

## JURY DEMAND

27. Plaintiffs request trial by jury and tender the required fee with the filing of this Original Complaint.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, MARGARET DUVAL and LAURA MOORE, pray that Defendants, MARY ANN FRANKEN, M.D, RONALD H. HODGES, M.D., SHANE DRIGGS, M.D., R. MOSS HAMPTON, M.D., DAVID G. MCNEIR, M.D., NORTHWEST TEXAS HEALTHCARE SYSTEM, INC., AND UNIVERSAL HEALTH SERVICES, INC., be cited to appear herein and upon hearing and trial by jury and verdict, the Plaintiffs recover damages as allowed by law, punitive or exemplary damages, prejudgment and post-judgment interest, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

GARNER & STEIN, L.L.P.
Robert E. Garner, No. 07677000
777 Amarillo National Plaza II
500 S. Taylor, LB #233
Amarillo, Texas 79101-2446
Tel. No.: 806/373-0505
Fax No.: 806/379-8056

WHITTENBURG WHITTENBURG & SCHACHTER, P.C.
Karl L. Baumgardner, No. 01931940
1010 S. Harrison, P.O. Box 31718
Amarillo, Texas 79120-1718
(806) 372-5700   Fax 372-5757

HADDAD LAWRENCE, L.L.C.
Michael Haddad, Louisiana Bar No. 20208
John S. Lawrence, Jr., Texas Bar No. 00795916
1305 West Causeway Approach
Mandeville, Louisiana 70471
(504) 727-0920 Fax 727-0940

_____
Of Counsel

ATTORNEYS FOR PLAINTIFFS